**Opinion issued March 27, 2014.**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-13-00463-CV

———————————

**VERONICA L. DAVIS, Appellant**

**V.**

**JAMES A. WEST AND HOUSTON REPORTING SERVICES, Appellees**

On Appeal from the 149th District Court
Brazoria County, Texas
Trial Court Case No. 40,104

## O P I N I O N

This is the fourth appeal arising out of two lawsuits regarding court reporter fees. In the first lawsuit filed in justice court, Houston Reporting Services (HRS) alleged that Veronica Davis, an attorney, breached her contractual obligation to pay for deposition transcripts. HRS obtained a post-answer default judgment

against Davis, and then used a court-appointed receiver to remove funds from Davis's bank account. Davis filed a notice of appeal; however, the appeal was dismissed.

In the second lawsuit, Davis sued HRS, its attorney, the court-appointed receiver, and her own bank in district court. All defendants except HRS were granted summary judgment, and their cases were severed. HRS ultimately won on summary judgment. This appeal is limited to Davis's claims against HRS.

In three issues, Davis contends that (1) the trial court lacked jurisdiction to grant summary judgment to HRS due to an earlier recusal order, (2) even if the court had jurisdiction, fact issues existed that prevented judgment as a matter of law, and (3) the trial court erred by denying Davis's two earlier motions for default judgment against HRS.

We affirm.

## Background

HRS contends that Davis ordered copies of deposition transcripts on behalf of her client. Davis disputes this and states that, regardless, she withdrew as attorney of record for that client. When Davis failed to pay for the transcripts, HRS sued her in justice court and obtained a post-answer default judgment. Davis asserts that the justice court made multiple errors in granting the default judgment against her and, later, authorizing the removal of funds from her bank account. She

challenges the notice given to her of the trial setting, the appointment of the receiver, the issuance of a turnover order, and multiple other aspects of the litigation. Although she initially appealed that judgment, her appeal was dismissed because she did not pay the required fees.

In a second lawsuit, Davis sued HRS, its attorney, the court-appointed receiver, and her bank in district court. Her cause of action against HRS was for abuse of process related to the earlier default judgment and collection efforts. The receiver and bank were granted summary judgments, which were severed, appealed to this Court, and affirmed.[1] While her claims against HRS and West were still pending, Davis filed a motion to recuse the district court judge, Robert E. May. May recused himself and requested that the presiding judge for the Second Administrative District "assign a judge to sit in this cause." The presiding judge "assign[ed] the Honorable Neil Caldwell . . . to the 149th Judicial District Court of Brazoria County, Texas," which was Judge May's court.

West moved for summary judgment. At the hearing on that motion, Davis orally requested a default judgment against HRS. Before Judge Caldwell ruled, HRS filed its answer. Judge Caldwell denied Davis's motion for default against HRS. Judge Caldwell granted West's summary judgment motion and severed it into a final judgment. Davis appealed but her appeal was dismissed for failure to

---

[1] *See Davis v. West*, 317 S.W.3d 301 (Tex. App.—Houston [1st Dist.] 2009, no pet.) (affirming summary judgment for receiver and bank).

pay the filing fee. Little activity took place in the trial court over the next two years on the only remaining claim—Davis's suit for abuse of process against HRS.

When Judge May retired, Judge Terri Holder was elected to take his place. Judge Holder set the case for trial. HRS did not appear at the February 2013 trial date, leading Davis to move for a post-answer default judgment—her second motion for default judgment. The trial court denied the motion, noting that its file did not indicate that HRS had received notice of the trial setting. Two months later, Judge Holder signed an order granting summary judgment to HRS. Davis appeals the summary judgment in HRS's favor, arguing that the court lacked jurisdiction. She also alleges that the trial court erred by denying her two motions for default judgment.

**Recusal**

In her first issue, Davis argues that the "149th lacked jurisdiction to render the decision in this cause" because the cause "was never reassigned back to the 149th Judicial District Court by the Administrative Judge for the Second Judicial District." It appears Davis is making two separate arguments: (1) that the 149th Judicial District Court, as an entity broader than any single judge, lacked jurisdiction, and (2) that Judge May's elected replacement, Judge Holder, lacked authority to dispose of her case. We consider first Davis's contention that the 149th lacked jurisdiction.

4

## A. Recusal of 149th Judicial District Court

Davis contends that the 149th lacked jurisdiction because the administrative judge assigned the case to another judge and never reassigned it back to the 149th. Davis relies on section 25.0022[2] of the Texas Government Code to support her contention; however, that provision does not apply here. It falls within subchapter B, entitled "General Provisions Relating to Statutory Probate Courts" and concerns "Administration of Statutory Probate Courts." TEX. GOV'T CODE ANN. § 25.0022 (West Supp. 2013).

The Rules of Civil Procedure govern recusal of district court judges. *See* TEX. R. CIV. P. 18a,[3] 18b. A party seeking to recuse a judge may file a verified motion stating one or more of the grounds listed in rule 18b as a basis for recusal. TEX. R. CIV. P. 18a(a). The judge can either sign an order of recusal or refer the motion to the regional presiding judge. TEX. R. CIV. P. 18a(f). In the latter case, if the motion is granted, "the regional presiding judge must transfer the case to another court *or* assign another judge to the case." TEX. R. CIV. P. 18a(g)(7) (emphasis added).

---

[2] Davis actually cites this court to section 25.022; however, that section does not exist. In context, we understand her to be referring to section 25.0022 instead. TEX. GOV'T CODE ANN. § 25.0022 (West. Supp. 2013).

[3] Comment to Rule 18a states as follows: "Rule 18a governs the procedure for recusing or disqualifying a judge sitting in any trial court other than a statutory probate court, justice court or municipal court. Chapter 25 of the Government Code governs statutory probate courts . . . ." TEX. R. CIV. P. 18a comment.

Davis's argument that the 149th lacked jurisdiction after Judge May was recused is incorrect for three reasons. First, Davis incorrectly categorizes a recusal issue as a jurisdictional issue. Judicial recusal is a non-jurisdictional issue that requires either a proper recusal motion or an assertion that the case has been assigned to another court to avoid waiver. *See Buckholts Indep. Sch. Dist. v. Glaser*, 632 S.W.2d 146, 148 (Tex. 1982); *McElwee v. McElwee*, 911 S.W.2d 182, 185–86 (Tex. App.—Houston [1st Dist.] 1995, writ denied) (noting that ability to recuse judge can be waived). By contrast, judicial disqualification is a jurisdictional issue, and any judgment rendered by a constitutionally disqualified judge is void. *See In re Wilhite*, 298 S.W.3d 754, 757 (Tex. App.—Houston [1st Dist.] 2009, orig. proceeding) (noting differences between recusal and disqualification); *Gulf Mar. Warehouse Co. v. Towers*, 858 S.W.2d 556 (Tex. App.—Beaumont 1993, writ denied) (explaining further distinction between recusal and disqualification).

Second, recusal removes only the individually challenged judge—not the court—from participation in a case. *See* TEX. R. CIV. P. 18a, 18b. Rule 18a contemplates recusal of "a judge who is sitting in the case." TEX. R. CIV. P. 18a. Rule 18b states that "a judge" may be recused for one of eight possible reasons, including "personal bias . . . personal knowledge of disputed evidentiary facts," and that "the judge, individually or as a fiduciary, or the judge's spouse or minor

child residing in the judge's household, has a financial interest in the subject matter." TEX. R. CIV. P. 18b. These reasons are specific to a judge as an individual and do not cause the numbered court, as an entity, to also be recused.

Third, not all recusals result in reassignment to another court, as Davis suggests. Instead, the rules afford the regional presiding judge a choice either (1) to "transfer the case to another court" or (2) to "assign another judge to the case." TEX. R. CIV. P. 18a(g)(7). In this case, the administrative judge assigned Judge Caldwell to the 149th Judicial District Court to preside over Davis's case against HRS. Therefore, the case was not transferred from the 149th. And there is no basis for concluding that the court lacked jurisdiction as a result of Judge Caldwell's assignment.

We turn next to Davis's contention that recusal of Judge May caused his replacement, Judge Holder, also to be recused.

## B. Recusal of Judge Holder

Davis states that she "outlined [her] objection" to Judge Holder presiding over her case at the hearing on HRS's motion for summary judgment; however, Davis did not state an objection at that hearing or file a written motion to recuse the judge. Instead, she stated as follows:

> MS. DAVIS:  Mr. West never did file an answer to this case until this case was transferred from the 149th. *As a matter of fact, I'd like to reflect on the record, it's never been*

7

> *transferred back to the 149th because it was transferred out.* So in terms of—

COURT:       It wasn't transferred out. It was—Judge Caldwell was appointed to hear it as a visiting judge, but it wasn't transferred from this court.

MS. DAVIS:   No. It was transferred from the 149th.

COURT:       That's not what my file reflects. Go ahead.

We read this exchange as an argument that the 149th lacked jurisdiction, a contention we already have rejected. Davis did not move to recuse Judge Holder. To the extent Davis is asserting that Judge Holder also should have been recused, Davis has waived that complaint by failing to raise it in the trial court. *Cf. Pena v. Pena*, 986 S.W.2d 696, 700–01 (Tex. App.—Corpus Christi 1998, pet. denied) (holding that party waived claim for recusal by failing to "specifically request it" even though party asserted in motion for new trial facts that, if true, would support recusal motion); *see also Barron v. State Att'y Gen.*, 108 S.W.3d 379, 382 (Tex. App.—Tyler 2003, no pet.) (explaining that rule 18a requires recusal motion to be in writing and verified).

Davis contends that she also objected to Judge Holder at a hearing on a motion for continuance; however, we find no evidence of an objection in the record.

Having concluded that (1) Judge Caldwell was assigned to the 149th and that court retained jurisdiction over Davis's case, and (2) Davis failed to effectively

8

seek recusal of Judge Holder, we hold that Judge Holder had jurisdiction to rule on HRS's motion for summary judgment.

We, therefore, overrule issue one.

### Denial of Default Judgments

In her second issue, Davis challenges the denial of two separate motions for default judgment against HRS.

### A.      Standard of review

Denial of a motion for default judgment is reviewed under an abuse of discretion standard. *See Aguilar v. Livingston*, 154 S.W.3d 832, 833 (Tex. App.—Houston [14th Dist.] 2005, no pet.) (citing *Aguilar v. Alvarado*, 39 S.W.3d 244, 247–48 (Tex. App.—Waco 1999, pet. denied). Determination of factual matters is left to the sound discretion of the trial court; however, a trial court abuses its discretion when it fails to analyze or apply the law correctly. *See id.*

### B.      Denial of default judgment in 2009

Davis complains that the visiting judge denied her request for default judgment against HRS in 2009. She states that she orally moved for default judgment at the hearing on West's motion for summary judgment on September 17, 2009—before HRS answered. Davis followed up her oral motion for default with a written motion filed on October 5, 2009. But on October 1—before Davis filed her written motion—HRS filed an answer. The order denying the motion,

dated October 6, 2009, acknowledged that Davis moved for default in September but denied the motion because HRS answered on October 1.

The temporal requirement on a judge to rule on a pending motion for default judgment is only that the judge rule within a "reasonable time." *Barnes v. State*, 832 S.W.2d 424, 426 (Tex. App.—Houston [1st Dist.] 1992, orig. proceeding); *In re Martinez Ramirez*, 994 S.W.2d 682, 683 (Tex. App.—San Antonio 1998, orig. proceeding). "Whether the judge has acted within a 'reasonable' period of time depends on the circumstances of the case." *In re Mitchell*, No. 10-07-00250-CV, 2008 WL 191477, at *1 (Tex. App.—Waco Jan. 23, 2008, orig. proceeding) (mem. op.). Appellate courts have held that one month is a reasonable time to pass before a court rules. *See In re Holleman*, 2004 WL 624584, at *1 (Tex. App.—San Antonio Mar. 31, 2004, orig. proceeding) (mem. op.); *but see In re Martinez Ramirez*, 994 S.W.2d at 683–84 (deciding that 18 month delay was unreasonable). In this case, only two weeks passed between the oral motion for default and the date the court ruled on the motion. We hold that the court ruled within a reasonable time.

Davis also argues that her right to a default judgment was prejudiced by the trial court's delay in ruling until after HRS filed an answer. We disagree. "At any time before a judgment by default has been actually announced by the court, a defendant has the right to file his answer." *City of Jefferson v. Jones*, 12 S.W. 749,

10

749 (Tex. 1889); *In re $475,001.16*, 96 S.W.3d 625, 627 (Tex. App.—Houston [1st Dist.] 2002, no pet.); *In re S.K.A.*, 236 S.W.3d 875, 895 (Tex. App.—Texarkana 2007, pet. denied). "Once an answer is on file, even if it is filed after the due date, the district court may not render a no-answer default judgment." *Conely v. Tex. Bd. of Criminal Justice*, No. 03-08-00293-CV, 2010 WL 1632972, at *2 (Tex. App.—Austin Apr. 22, 2010, no pet.) (mem. op.); TEX. R. CIV. P. 239 (judgment by default). HRS's answer made Davis's timing complaint moot. *Conely*, 2010 WL 1632972, at *2. In *Conely*, the plaintiff complained on appeal that the trial court "waited until defendants filed a written answer before it ruled on [his] default motion." *Id*. The appellate court held that, "even when a district court refuses to rule on a motion for default judgment, once an answer has been filed, any complaints regarding the district court's prior failure to act are rendered moot." *Id.* (citing *Palacios v. Rayburn*, 516 S.W.2d 292, 294 (Tex. App.—Houston [1st Dist.] 1974, no writ) (denying petition for writ of mandamus seeking to compel trial court to rule on pending motion for default judgment because defendant filed answer in interim).

We conclude that the trial court did not abuse its discretion by failing to rule on the motion during the two week period that elapsed between the date of Davis's oral request for default and the date HRS answered. We further hold that the filing of an answer on behalf of HRS mooted Davis's complaint.

## C.    Denial of default judgment in 2013

Davis also argues that the trial court abused its discretion by denying her motion for a post-answer default judgment presented at the February 2013 trial setting. HRS failed to appear for trial. Davis presented evidence and moved for default judgment. Later that day, Judge Holder wrote a letter to the parties stating that the court did "not find verification that notice of [the trial setting] was given to Mr. West [attorney for HRS]. Since an answer is on file for Houston Reporting Services the default requested today is denied." Subsequently, in a motion to quash and for protective order, HRS explained that it had received a notice from the court two years earlier stating that the case had been dismissed and had not received any notice of the 2013 trial setting.

A post-answer default is possible when a party has filed an answer but fails to appear for trial. *See Stoner v. Thompson*, 578 S.W.2d 679, 682 (Tex. 1979). Once the party answers, that party must be given adequate notice of a trial setting before a post-answer default can be granted. *See* TEX. R. CIV. P. 245 (requiring trial court to give parties not less than forty-five days' notice of first trial setting, then "reasonable notice" of any subsequent setting). Failure to appear at trial "constitutes neither an abandonment of defendant's answer nor an implied confession of any issues thus joined by the defendant's answer." *Stoner*, 578 S.W.2d at 682. Judgment cannot be entered on the pleadings; the plaintiff must

12

prove his case at trial. *Id.* (citing *Frymire Eng'g Co. v. Grantham*, 524 S.W.2d 680 (Tex. 1975)).

Davis points to the trial court's docket sheet as evidence notice was sent to HRS of the trial setting. But docket sheets are not evidence and, therefore, cannot demonstrate that proper notice was given. *Pifer v. State*, 893 S.W.2d 109, 111 (Tex. App.—Houston [1st Dist.] 1995, pet. ref'd); *Guyot v. Guyot*, 3 S.W.3d 243, 246 (Tex. App.—Fort Worth 1999, no pet.).

Given the trial court's explanation that the court's file did not support the conclusion that proper notice was given to HRS of the trial setting, we hold that the trial court did not abuse its discretion denying Davis's 2013 motion for default judgment. *Cf. Aguilar*, 154 S.W.3d at 833 (noting that "determination of factual matters is left to the sound discretion of the trial court").

We overrule issue two.

### Abuse of Process

Davis sued HRS for the tort of "abuse of process." HRS filed both a no-evidence and a traditional motion for summary judgment. In her third issue, Davis argues that the trial court erred by granting summary judgment to HRS because a fact issue existed whether HRS abused process in its efforts to obtain and enforce the judgment against her and HRS failed to establish its right to judgment as a matter of law.

## A.  Standard of review

We review a summary judgment de novo. *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010). If a trial court grants summary judgment without specifying the grounds for doing so, we must uphold the trial court's judgment if any of the grounds relied on by the movant is meritorious. *Parker v. Valerus Compression Servs., LP*, 365 S.W.3d 61, 65 (Tex. App.—Houston [1st Dist.] 2011, pet. denied). When reviewing a summary judgment motion, we (1) take as true all evidence favorable to the nonmovant and (2) indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005); *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003).

A party seeking summary judgment may combine in a single motion a request for summary judgment under the no-evidence standard with a request under the traditional, as-a-matter-of-law standard. *Binur v. Jacobo*, 135 S.W.3d 646, 650 (Tex. 2004). If a motion argues both bases for summary judgment and the order does not specify which motion was granted, we typically review the propriety of the summary judgment under the no-evidence standard first. *See Parker*, 365 S.W.3d at 65. If the no-evidence summary judgment was properly granted, we need not reach arguments on the traditional motion for summary judgment. *See id.*

To prevail on a no-evidence motion for summary judgment, the movant must establish that there is no evidence to support an essential element of the nonmovant's claim on which the nonmovant would have the burden of proof at trial. *See* TEX. R. CIV. P. 166a(i); *Hahn v. Love*, 321 S.W.3d 517, 523–24 (Tex. App.—Houston [1st Dist.] 2009, pet. denied).

## B.     The tort of abuse of process

The elements of an abuse-of-process claim are (1) the defendant misused a regularly issued process—e.g., "the issuance of a citation or a writ"—for a purpose not lawfully warranted by that particular process, (2) the defendant had an ulterior motive or purpose for misusing the process, and (3) the plaintiff sustained damage from the irregularity. *Detenbeck v. Koester*, 886 S.W.2d 477, 480 (Tex. App.—Houston [1st Dist.] 1994, no writ); *Tandy Corp. v. McGregor*, 527 S.W.2d 246, 249 (Tex. App.—Texarkana 1975, writ ref'd n.r.e.); *see also Pittsburgh SNF, LLC v. PharMerica E., Inc.*, 2:10-CV-363-JRG-RSP, 2012 WL 4509753, at *2 (E.D. Tex. July 19, 2012), *report and recommendation adopted*, No. 2:10-CV-363-JRG-RSP, 2012 WL 4508127 (E.D. Tex. Sept. 28, 2012) (listing examples of processes). The focus is on the use of the process once it is properly obtained, not on the motive for originally obtaining the process. *See Detenbeck*, 886 S.W.2d at 480–81; *Tandy*, 527 S.W.2d at 249 ("An action for abuse of process presupposes an originally valid and regular process, duly and properly issued."); *cf. Bossin v.*

15

*Towber*, 894 S.W.2d 25, 33 (Tex. App.—Houston [14th Dist.] 1994, writ denied) (explaining that malicious prosecution, by contrast, focuses on party's actions and malice in getting process issued); *Tex. Beef Cattle Co. v. Green*, 921 S.W.2d 203, 207–08 (Tex. 1996) (malicious prosecution case).

A suit for abuse of process must be based on an allegation that the other party misused process for a collateral purpose:

> Some definite act or threat not authorized by the process . . . is required; and there is no liability where the defendant has done nothing more than carry out the process to its authorized conclusion, even though with bad intentions. The improper purpose usually takes the form of coercion to obtain a collateral advantage, not properly involved in the proceeding itself, such as the surrender of property or the payment of money, by the use of the process as a threat or a club. There is, in other words, a form of extortion, and it is what is done in the course of negotiation, rather than the issuance or any formal use of the process itself, which constitutes the tort.

*Blackstock v. Tatum*, 396 S.W.2d 463, 468 (Tex. Civ. App.—Houston 1965, no writ); *cf. Blanton v. Morgan*, 681 S.W.2d 876, 878 (Tex. App.—El Paso 1984, writ ref'd n.r.e.) (seeking exemplary damages as means to extort settlement not abuse of process because process was used for intended purpose to require answer to petition). The process must be used to "compel[] a party to do a collateral thing which he would not be compelled to do" otherwise. *See Detenbeck*, 886 S.W.2d at 480; *Blanton*, 681 S.W.2d at 878; *Baubles & Beads v. Louis Vuitton, S.A.*, 766 S.W.2d 377, 378–79 (Tex. App.—Texarkana 1989, no writ) (citing RESTATEMENT (SECOND) OF TORTS § 682, cmt. b (1977)).

16

**C.      No evidence in support of abuse of process claim**

HRS filed a no-evidence motion for summary judgment arguing that Davis presented no evidence of a misuse of process, e.g., the order appointing a receiver or the turnover order. In her response, Davis did not argue that HRS misused a properly obtained process to obtain a collateral advantage. Instead, she argued that HRS's suit to collect a debt was filed in the wrong venue, that she was not notified of the trial setting, that the turnover order was deficient, and that the amount of funds removed from her account exceeded the judgment. Davis proffered no evidence in her response to support her complaint that the funds removed exceeded the lawful amount owed under the default judgment. The court order closing the receivership lists the amount the receiver removed from Davis's account, which matches the amount Davis claims to have been removed. Davis's other complaints, challenging the legality of the judgment, are required to have been raised through a direct appeal of the judgment, not through an independent suit for misuse of a properly issued process. *See Davis v. West*, 317 S.W.3d 301, 309 (Tex. App.— Houston [1st Dist.] 2009, no pet.) (affirming summary judgment for court-appointed receiver and bank against Davis; noting that Davis "failed to timely prosecute a direct appeal of the turnover order or seek injunctive or mandamus relief prohibiting the execution of the turnover order" and stating that appellate challenge to turnover order and scope of the receiver's powers constituted "a

17

collateral attack on the turnover order."); *see also Browning v. Prostok*, 165 S.W.3d 336, 346 (Tex. 2005) ("A collateral attack is an attempt to avoid the binding force of a judgment in a proceeding not instituted for the purpose of correcting, modifying, or vacating the judgment, but in order to obtain some specific relief which the judgment currently stands as a bar against.").

Davis presented no evidence that HRS misused process to compel Davis to act in a collateral way; rather, the only evidence is that the process was used to satisfy the debt. *See Bossin*, 894 S.W.2d at 33; *see also March v. Cacioppo*, 185 N.E.2d 397, 243 (Ill. App. Ct. 1962) ("The complaint does not charge an ulterior purpose or that either judgment or garnishment was used to effect an objective not within their proper scope, such as an attempt to force the plaintiffs to do something other than to pay their supposed debt. There was no abuse of process in this case."). Further, the only evidence presented by Davis—her affidavit—stated that the written request for deposition transcripts did not create a legal obligation for her to pay HRS the underlying debt, that she was never given a copy of the release of judgment, and that she was given insufficient notice that the release of judgment would be used as summary judgment evidence. None of these statements raises a fact issue concerning misuse of process for a collateral purpose. *See Baubles & Beads*, 766 S.W.2d at 379 (stating that neither pleadings nor response to motion for summary judgment constitutes summary judgment evidence and finding that

18

plaintiff failed to present evidence to avoid summary judgment on abuse of process claim).

Having concluded that Davis presented no evidence that HRS misused a properly obtained process for a collateral advantage, we conclude that the trial court did not abuse its discretion granting summary judgment to HRS on Davis's abuse of process claim.

We overrule issue three.

## Conclusion

Having overruled all three of Davis's issues, we affirm the judgment of the trial court.

Harvey Brown  
Justice

Panel consists of Justices Keyes, Bland, and Brown.