

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-20-00283-CV

———————————————

IN RE B.F.

On Appeal from the 393rd District Court
Denton County, Texas
Trial Court No. 18-9884-393

Before Sudderth, C.J.; Kerr and Womack, JJ.
Memorandum Opinion by Justice Kerr

**MEMORANDUM OPINION**

In this original proceeding, relator B.F. (Father) seeks mandamus relief from a temporary order naming real party in interest B.B. as a possessory conservator of F.F. and V.C. ("the Children"). Because the trial court clearly abused its discretion and because Father lacks an adequate remedy by appeal, we conditionally grant mandamus relief and order the trial court to vacate its September 10, 2020 "Temporary Order."

## I. Background

Father and K.F. (Mother) are the parents of the Children. In 2018, Father filed a divorce action against Mother. Shortly after that divorce action was filed, the trial court signed a temporary order naming Father and Mother as joint managing conservators of F.F. V.C. was born in 2019, and after V.C.'s birth, the trial court signed a temporary order naming Father and Mother as joint managing conservators of both F.F. and V.C.

B.B. intervened in the lawsuit on August 12, 2020, and filed a request for a temporary restraining order. B.B. is unrelated to the Children. B.B. asserts in her response[1] that the Children "have lived with [her] for the entirety of the court case," and that Mother lived with her before and during parts of the underlying court case.

---

[1]After Father filed his petition for writ of mandamus, we requested a response and temporarily stayed the September 10, 2020 "Temporary Order." *See* Tex. R. App. P. 52.8(b)(1), 52.10(b). B.B. filed a document titled "Real Party B.L.B[.] Answer to Emergency Motion for Temporary Relief by Relator," which we construe as B.B.'s response.

In her request for a temporary restraining order, B.B. asserted that Mother had mental-health problems and had physically abused F.F. in the past. The trial court granted the temporary restraining order, scheduled a hearing to take place on August 25, 2020, and ordered Mother and Father not to remove the Children from B.B.'s possession until that hearing. In its docket notes pertaining to that order, the trial court noted that it had "concerns over appropriateness of continued placement with either parent or [B.B.]."[2]

The temporary order complained of by Father in this mandamus proceeding resulted from the August 25, 2020 hearing. In that temporary order, Father and Mother were named as joint managing conservators of the Children, and Father was given the right to designate the primary residence of the Children during the pendency of the case. B.B. was named a possessory conservator and awarded possession during the second and fourth weekends of each month and during certain weeks in the summer. The temporary order also allowed for B.B. to have 15-minute video

---

[2]The trial court's docket notes state

Entered TRO prohibiting [Mother] from removing children from possession of [B.B.] but only after trying to contact [Father] and [M]other at both her last known place of work and at Samaritan Inn; and only after contacting . . . CPS and making report to CPS as court had concerns over appropriateness of continued placement with either parent or [B.B.]. Entered this order on emergency interim basis as limited options available to court at this time.

conference calls with the Children on Monday and Wednesday evenings. Through this mandamus proceeding, Father asks us to vacate the temporary order.

## II. Discussion

### A. Standard of Review

We grant the extraordinary relief of mandamus only when the trial court has clearly abused its discretion and the relator lacks an adequate appellate remedy. *In re Team Rocket, L.P.*, 256 S.W.3d 257, 259 (Tex. 2008) (orig. proceeding); *see In re State*, 355 S.W.3d 611, 613 (Tex. 2011) (orig. proceeding).

A trial court abuses its discretion if it reaches a decision so arbitrary and unreasonable that it is a clear and prejudicial error of law or if it fails to correctly analyze or apply the law to the facts. *In re H.E.B. Grocery Co.*, 492 S.W.3d 300, 302–03 (Tex. 2016) (per curiam) (orig. proceeding); *Walker v. Packer*, 827 S.W.2d 833, 839–40 (Tex. 1992) (orig. proceeding); *see also State v. Naylor*, 466 S.W.3d 783, 793 (Tex. 2015) (orig. proceeding) ("A writ of mandamus is an extraordinary remedy available 'to correct an action of a trial judge who commits an abuse of discretion or a violation of a clear duty under the law.'" (quoting *State v. Walker*, 679 S.W.2d 484, 485 (Tex. 1984) (orig. proceeding))). We defer to a trial court's factual determinations that have evidentiary support, but we review the trial court's legal determinations de novo. *In re Labatt Food Serv., L.P.*, 279 S.W.3d 640, 643 (Tex. 2009) (orig. proceeding).

**B. Did the Trial Court Clearly Abuse Its Discretion?**

Father contends that the Texas Supreme Court's recent decision in *In re C.J.C.* is controlling and requires us to grant him mandamus relief. *See* 603 S.W.3d 804 (Tex. 2020).

In *C.J.C.*, the trial court named a father and mother joint managing conservators of their daughter. *Id.* at 808. The mother later became involved in a relationship with a boyfriend, and the mother and daughter eventually moved into the boyfriend's home. *Id.* The mother later died, and the daughter began living exclusively with the father. *Id.* The boyfriend later intervened in the lawsuit and requested that he be given certain conservatorship rights to the daughter. *Id.* at 809. The trial court entered temporary orders naming the boyfriend as a possessory conservator of the daughter. *Id.* at 810. The father filed a petition for writ of mandamus that was denied by the court of appeals. *Id.* The father then petitioned the Texas Supreme Court. *Id.*

The Texas Supreme Court began its analysis by discussing certain fundamental precepts regarding a parent's rights to their children. It cited *Troxel v. Granville*, 530 U.S. 57, 120 S. Ct. 2054 (2000), for the proposition that the United States Constitution "protects the fundamental right of parents to make decisions concerning the care, custody, and control of their children." *Id.* at 807 (citing *Troxel*, 530 U.S. at 66, 120 S. Ct. at 2060). It noted that this recognition stemmed from "a strong tradition of parental concern for the nurture and upbringing of their children." *Id.* at 811 (citing *Wisconsin v. Yoder*, 406 U.S. 205, 232, 92 S. Ct. 1526, 1541 (1972)). It also

5

recognized that the government may not "infringe on the fundamental right of parents to make child rearing decisions simply because a state judge believes a better decision could be made." *Id.* at 807 (citing *In re Derzapf*, 219 S.W.3d 327, 333 (Tex. 2007) (per curiam)) (internal quotations omitted).

With these general precepts in mind, the Texas Supreme Court then turned to the father's petition for writ of mandamus and held that "[w]hen a nonparent requests conservatorship or possession of a child, the child's best interest is embedded with the presumption that it is the fit parent—not a court—who makes the determination whether to allow that request." *Id.* at 820. The court noted that no party had alleged, no evidence had demonstrated, and no court finding existed that the father was unfit to be the daughter's parent. *Id.* Nor were there any findings rebutting the presumption that the father acted in his daughter's best interest. *Id.* Accordingly, the court held that the trial court had abused its discretion by ordering that the boyfriend be named the child's possessory conservator and granted mandamus relief. *Id.*

Here, we have a situation that largely mirrors the facts of *C.J.C.* Father has been named a joint managing conservator and objects to B.B.—a nonparent—being named a possessory conservator and awarded certain possession and access to the Children. The only question left to decide relates to Father's fitness as a parent.

In his petition, Father states that "no evidence was presented to the Trial Court that [he] is anything but a fit parent." In her response, B.B. does not specifically argue

6

that Father is an unfit parent although she lists out several "facts" for us to consider. We will briefly address the "facts" that appear to implicate Father's fitness.[3]

B.B. avers that Father "has abused methamphetamines for two long periods in his life" although she has provided no evidence to support that statement, nor has she provided any evidence to suggest that Father is currently abusing drugs. B.B. claims that there is an active CPS case against Father's girlfriend stemming from an incident where the girlfriend's child allegedly tested positive for methamphetamine after Father and the girlfriend used it in the child's presence, and she attached what was purported to be a docket sheet from that CPS case. Even if we were to consider that docket sheet as evidence,[4] it does not mention Father and provides nothing to impugn Father's fitness as a parent. B.B. also states that F.F. tested positive for drugs "due to [Father's] drug abuse history," and she attached to her response a printout of the results of a drug test that she claims was put into evidence before the trial court. That

---

[3]Several of the "facts" listed by B.B. appear to implicate Mother's fitness. It is Father, however, who has objected to the temporary order. We will thus address only the "facts" that appear to implicate Father's fitness.

[4]We note that docket sheets are generally not evidence. *See Gonzalez v. Sanchez*, No. 07-16-00289-CV, 2018 WL 1054795, at *4 (Tex. App.—Amarillo Feb. 23, 2018, no pet.) (mem. op.); *Davis v. West*, 433 S.W.3d 101, 109 (Tex. App.—Houston [1st Dist.] 2014, pet. denied); *but c.f.* Tex. Fam. Code Ann. § 101.026 (providing that trial court may render an order in a suit affecting the parent-child relationship "on the court's docket sheet"). We also note that Father has objected to the docket sheet from the CPS case and objected to other documents attached to B.B.'s response. None of the objected-to documents provides evidence that Father is unfit. Thus, even if we considered the objected-to documents, our result would not change.

drug-test result reflects that F.F. tested positive for marijuana.[5] But other than B.B.'s bald assertion, nothing indicates that this drug-test result was due to some action by Father; indeed, the sample for the drug test was collected in August 2019, and according to B.B., F.F. was living with her at that time.

B.B. also claims that Father went "long periods" without seeing the Children, but she provides no evidence to support that contention and points only to a nine-day period in 2019 when the Children were living with her. She also contends that Father "has not paid for court[-]ordered child support for the entirety of the court case" although the evidence she points to—a docket sheet from this case—does not reflect that Father actually missed any child-support payments. Finally, B.B. states that Father and Mother have not been joint managing conservators for the entirety of the case, again pointing to the docket sheet to support that statement. We have reviewed the docket sheet, and nothing in it indicates that anyone other than Father and Mother have been named as joint managing conservators in this case.

We have not found any evidence in the record before us to indicate that Father is an unfit parent. There are also no findings in the record to indicate that Father is unfit. To the contrary, Father has consistently been named a joint managing conservator in this case, including in the temporary order in which B.B. was named a possessory conservator. Because there is no evidence or finding that Father is unfit, it

---

[5]The result was negative for amphetamines.

is Father, and not the trial court, who is to determine whether to allow B.B. conservatorship or possession of the Children. *See C.J.C.*, 603 S.W.3d at 820 ("When a nonparent requests conservatorship or possession of a child, the child's best interest is embedded with the presumption that it is the fit parent—not a court—who makes the determination whether to allow that request."). The trial court thus abused its discretion when it named B.B. a possessory conservator and awarded her certain possession and access to the Children.

## C. Does Father Have an Adequate Remedy by Appeal?

Mandamus relief is available when a trial court erroneously permits a nonparent possession of a child over a fit parent's objection. *See id.* at 811; *Derzapf*, 219 S.W.3d at 334–35; *In re Calkins*, No. 09-11-00531-CV, 2011 WL 4975008, at *3 (Tex. App.—Beaumont Oct. 20, 2011, orig. proceeding) (mem. op.) (per. curiam) ("Because temporary orders that divest fit parents of possession of their child are irremediable, mandamus relief is appropriate."). Because the trial court has named B.B. as a possessory conservator over Father's objection, Father lacks an adequate remedy by appeal.[6]

## III. Conclusion

Because the trial court clearly abused its discretion and Father has no adequate remedy by appeal, Father is entitled to mandamus relief. Accordingly, we conditionally

---

[6]In her response, B.B. does not suggest that Father has an adequate remedy by appeal.

grant a writ of mandamus and direct the trial court to vacate its September 10, 2020 "Temporary Order." *See* Tex. R. App. P. 52.8(c). Our writ will issue only if the trial court fails to comply.

/s/ Elizabeth Kerr
Elizabeth Kerr
Justice

Delivered: October 15, 2020