

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-24-00119-CV

———————————————

THE KUTE BAR, LLC; C&G ALL SOLUTIONS, INC.; TRANG T. DANG; LE GIANG T. TRAN, INDIVIDUALLY AND DERIVATIVELY ON BEHALF OF THE KUTE BAR, LLC; AND BECKY BINH NGUYEN, Appellants

V.

FUGO TRAN F/K/A ANH TRAN, Appellee

---

On Appeal from the 17th District Court
Tarrant County, Texas
Trial Court No. 017-339756-23

---

Before Sudderth, C.J.; Kerr and Walker, JJ.
Memorandum Opinion by Justice Walker

## MEMORANDUM OPINION

This is an accelerated interlocutory appeal pursuant to the Texas Citizens Participation Act (TCPA). *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 27.001–.011, 51.014(a)(12) (authorizing interlocutory appeal of order denying motion to dismiss filed under TCPA Section 27.003). Appellants The Kute Bar, LLC; C&G All Solutions, Inc.; Trang T. Dang; Le Giang T. Tran, individually and derivatively on behalf of The Kute Bar, LLC; and Becky Binh Nguyen contend that the trial court erred by denying their TCPA motion to dismiss Appellee Fugo Tran's counterclaims for breaches of contract and fiduciary duty, tortious interference, and abuse of process. Applying the TCPA's standards, we affirm, in part, the trial court's order as it concerns Fugo's breach-of-contract, breach-of-fiduciary-duty, and tortious-interference claims; reverse, in part, and render judgment dismissing Fugo's abuse-of-process claim; and remand this matter for further proceedings consistent with this opinion.

## I. BACKGROUND

In 2021, Fugo had the idea to establish what would ultimately become The Kute Bar, a restaurant and karaoke bar. Appellants Becky, Dang, and Tran expressed interest in being Fugo's business partners. According to Fugo, the four of them orally

agreed to create a partnership to pursue the new venture, and each partner was assigned a specific role in the partnership.[1]

Becky, who was responsible for filing the necessary forms with the State of Texas to document the business's existence, proposed forming a limited liability company.[2] The other partners agreed, and Becky formed The Kute Bar, LLC in November 2021. Despite the formation of the limited liability company, Fugo maintained that he and the other partners intended to operate the business as a partnership.

In 2022, Fugo—who, as the operations manager, was working to get the restaurant up and running—entered into a construction contract and a commercial lease on The Kute Bar's behalf. Fugo personally guaranteed The Kute Bar's obligations under these agreements.

Less than one month after the restaurant began operating, disputes began to break out among the partners. In December 2022, Becky, Dang, and Tran informed Fugo that they all wanted out of the venture and proposed that Fugo buy them out. Fugo invited a new investor to purchase Becky's, Dang's, and Tran's interests, and

---

[1]The partners agreed to fund the start-up costs by contributing $150,000 each, and all did so except Tran, who contributed only $71,406.

[2]Fugo's understanding was that Becky wanted to form the limited liability company so that she could invest in the venture through her tax-preparation company, C&G Solutions, Inc., as this would allow her to shield her investment from her then-husband whom she planned to divorce.

Becky prepared a buyout proposal. But the parties were unable to reach an agreement regarding the terms of the buyout.

In January 2023, after the new investor lost interest in the proposed buyout, Appellants commenced this lawsuit, asserting claims against Fugo for breach of contract and breach of fiduciary duty. Then in March 2023, Becky, Dang, and Tran held a special members' meeting and voted to close The Kute Bar, LLC, sell the entity's assets to satisfy its outstanding debts, and distribute any remaining proceeds to the members. After Fugo attempted to open the restaurant for dinner service in contravention of the vote to cease operations, Appellants filed an application for temporary restraining order (TRO) and temporary injunction.[3] Following a hearing, the trial court signed a TRO preventing Fugo from, among other things, continuing to operate the restaurant or removing any of the restaurant's assets.

In January 2024, Fugo filed a counterpetition asserting seven causes of action against Appellants. In his counterpetition, he alleged, among other things, that The Kute Bar was actually a partnership, not a limited liability company, and that Appellants had misrepresented the nature of the business in their TRO application

---

[3]In their TRO application, Appellants alleged that Fugo acted in concert with his boyfriend and his boyfriend's mother to "forcibly break into the [r]estaurant" and open it for operation.

4

because their acknowledgement of the partnership's existence would have undermined their claims for injunctive relief.[4]

In February 2024, Appellants filed a partial motion to dismiss under the TCPA seeking the dismissal of Fugo's breach-of-contract, breach-of-fiduciary-duty, tortious-interference, and abuse-of-process claims. Following a hearing, the trial court signed an order denying Appellants' TCPA motion. This interlocutory appeal followed.

## II. DISCUSSION

In what amounts to a single issue,[5] Appellants contend that the trial court erred by denying their partial motion to dismiss because (1) the TCPA applies to Fugo's

---

[4]Fugo contends that Appellants attempted to mischaracterize The Kute Bar as a limited liability company because under the Texas Business Organizations Code, a limited liability company can be closed by a simple majority vote of the members, whereas the decision to close a partnership requires the partners' unanimous consent. *Compare* Tex. Bus. Orgs. Code Ann. §§ 101.356(c) (allowing a majority vote of members to approve "an action that would make it impossible for a limited liability company to carry out the ordinary business of the company"), 101.552(a) (providing that a voluntary winding up of a limited liability company may be approved by "a majority vote of all of the members"), *with id.* § 152.209(b) (requiring "the consent of all partners" to approve any "act outside the ordinary course of business of a partnership"). But we note that unless otherwise provided by a partnership agreement, a voluntary decision to wind up a domestic general partnership of unlimited duration requires only "the express will of a majority-in-interest of the partners." *Id.* § 11.057(a).

[5]Appellants' brief enumerates three issues, but they are all subparts of one overarching argument: that the trial court erred by denying their TCPA motion to dismiss. Because all of Appellants' issues pertain to the larger question of whether the trial court erred by denying their TCPA motion to dismiss, we will treat them as a single complaint. *See Grant v. Finecy*, No. 02-23-00310-CV, 2023 WL 8940395, at *2 n.3 (Tex. App.—Fort Worth Dec. 28, 2023, no pet.) (mem. op.).

breach-of-contract, breach-of-fiduciary-duty, tortious-interference, and abuse-of-process claims; (2) Fugo failed to establish each essential element of these claims by clear and specific evidence; and (3) Appellants established that they are entitled to judgment as a matter of law on each of these claims. Appellants are partially correct.

## A. STANDARD OF REVIEW AND GOVERNING LAW

The TCPA—commonly referred to as Texas's anti-SLAPP[6] statute—is intended to "protect[] citizens who petition or speak on matters of public concern from retaliatory lawsuits that seek to intimidate or silence them." *In re Lipsky*, 460 S.W.3d 579, 584 (Tex. 2015) (orig. proceeding); *see* Tex. Civ. Prac. & Rem. Code Ann. § 27.002 (summarizing TCPA's purpose as "encourag[ing] and safeguard[ing] the constitutional rights of persons . . . and, at the same time, protect[ing] the rights of a person to file meritorious lawsuits for demonstrable injury").

A party who moves for dismissal under the TCPA invokes a three-step, burden-shifting process: (1) first, the movant seeking dismissal must demonstrate that a "legal action" has been brought against him and that the action is "based on or is in response to" an exercise of a protected constitutional right; (2) then, the burden shifts to the party bringing the legal action to avoid dismissal by establishing, by clear and specific evidence, a prima facie case for each essential element of the claim in question; and (3) finally, the burden shifts back to the movant to justify dismissal by

---

[6]SLAPP stands for Strategic Lawsuit Against Public Participation. *See Windsor v. Round*, 591 S.W.3d 654, 658 (Tex. App.—Waco 2019, pet. denied).

6

establishing an affirmative defense or other ground on which he is entitled to judgment as a matter of law. *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.005(b)–(d); *Miller v. Schupp*, No. 02-21-00107-CV, 2022 WL 60606, at *1 (Tex. App.—Fort Worth Jan. 6, 2022, no pet.) (mem. op.).

We review a trial court's ruling on a TCPA motion to dismiss—including its determination of the parties' satisfaction of their respective burdens—de novo. *Landry's, Inc. v. Animal Legal Def. Fund*, 631 S.W.3d 40, 45–46 (Tex. 2021); *Miller*, 2022 WL 60606, at *1–2. Our review encompasses "the pleadings, evidence a court could consider under Rule 166a, Texas Rules of Civil Procedure, and supporting and opposing affidavits stating the facts on which the liability or defense is based," and we view all of these in a light most favorable to the nonmovant. Tex. Civ. Prac. & Rem. Code Ann. § 27.006(a); *see Maggret v. Ramsey's Rods & Restoration*, No. 02-20-00395-CV, 2021 WL 2253244, at *2 (Tex. App.—Fort Worth June 3, 2021, no pet.) (mem. op.).

### B. TCPA ANALYSIS

To determine whether the trial court erred by denying Appellants' TCPA motion, we must analyze each of Fugo's individual challenged causes of action under the framework outlined above.

### 1. Breach of Contract

Appellants contend that because Fugo's breach-of-contract claim is grounded upon statements contained in their TRO application, it is based on or in response to their exercise of the right to petition. *See* Tex. Civ. Prac. & Rem. Code Ann.

7

§ 27.001(4)(A)(i) (defining "[e]xercise of the right to petition" as, among other things, "a communication in or pertaining to . . . a judicial proceeding"); *see also id.* § 27.001(1) ("'Communication' includes the making or submitting of a statement or document in any form or medium, including oral, visual, written, audiovisual, or electronic."). To support this contention, they point to Fugo's allegation in his counterpetition that "[Appellants] breached the oral partnership agreement when they intentionally omitted the existence of the partnership and misrepresented to the Court that [The] Kute Bar is [a limited liability company] in their application[] for injunctive relief." According to Appellants, this allegation shows that Fugo's breach-of-contract claim "is entirely based on [Appellants' TRO] [a]pplication and the statements contained therein."

But viewing—as we must—Fugo's counterpetition in the light most favorable to him and in favor of the conclusion that his claims are not based on or in response to a protected constitutional right, we conclude that his breach-of-contract claim does not fall within the TCPA's scope. *See Cweren v. Eureka Multifamily Grp., L.P.*, No. 01-21-00470-CV, 2023 WL 2977755, at *16 (Tex. App.—Houston [1st Dist.] Apr. 18, 2023, pet. denied) (mem. op.) (citing *Abundant Life Therapeutic Servs., Tex., LLC v. Headen*, No. 05-20-00145-CV, 2020 WL 7296801, at *3 (Tex. App.—Dallas Dec. 11, 2020, pet. denied) (mem. op.)). When Fugo's counterpetition is viewed as a whole and his above-quoted allegation is taken in context, it is evident that his breach-of-contract claim is based on Appellants' efforts to force Fugo to buy out their shares in

8

The Kute Bar and to purportedly shut down the restaurant through a majority vote, not any statements in Appellants' TRO application. *See Tex. Right to Life v. Van Stean*, No. 03-21-00650-CV, 2023 WL 3687408, at \*5 (Tex. App.—Austin May 26, 2023, pet. filed) (mem. op.) (holding that trial court correctly concluded that TCPA did not apply to appellees' claims because "[t]aken in context and viewed as a whole" they were not based on appellant's speech or actions to publicize a bill but were actually in response to the legislature's enactment of the bill itself).

The first paragraph of the breach-of-contract section of Fugo's counterpetition "incorporates the [counterpetition's] foregoing paragraphs" detailing Becky, Dang, and Tran's efforts to shut down the restaurant to pressure Fugo—who, unlike the other partners, had personally guaranteed The Kute Bar's obligations under the commercial lease and the construction contract—into buying out their shares on terms favorable to them. And the next two sentences allege, "The acts and omissions complained [of] herein constitute breach of contract. Spec[ifically], Becky, Dang, and Tran have breached the oral agreement to form and operate [The] Kute Bar as a partnership." This context makes it clear that Fugo's inartful statement in the counterpetition's following paragraph that Appellants had "breached the oral partnership agreement" when they misrepresented the nature of The Kute Bar's business structure in their TRO application is best understood to mean that these misrepresentations to the court are evidence of Appellants' breach of the oral partnership agreement or, at most, are part of a broader array of conduct constituting

9

the breach. But even if we were to assume that the alleged misrepresentations in Appellants' TRO application were part of the panoply of conduct constituting the alleged breach, it is evident that at least some of the allegations relied upon by Fugo to support his breach-of-contract claim clearly fall outside the TCPA's scope, and in such circumstances, a trial court does not err by denying a TCPA motion to dismiss. *See Graves v. Evangelista-Ysasaga*, No. 14-22-00137-CV, 2023 WL 370589, at *4 (Tex. App.—Houston [14th Dist.] Jan. 24, 2023, pet denied) (mem. op.).

Thus, Appellants failed to carry their step-one burden, and the trial court did not err by denying Appellants' TCPA motion as to Fugo's breach-of-contract claim.

## 2. Breach of Fiduciary Duty

Relying on Fugo's statement in his counterpetition that Appellants had breached their fiduciary duties as partners by "improperly obtain[ing] a temporary restraining order that resulted in the closing of [The] Kute Bar," Appellants contend that Fugo's breach-of-fiduciary-duty claim is based on or in response to their TRO application—and, thus, their right to petition. But when this excerpt is viewed in context, it becomes evident that Fugo's breach-of-fiduciary-duty claim falls outside the TCPA's purview.

The full paragraph from which the above-quoted excerpt was taken reads as follows:

> Partners owe each other a fiduciary duty. *M.R. Champion, Inc. v. Mizell*, 904 S.W.2d 617, 618 (Tex. 1995). By concealing the partnership from the Court and treating [The] Kute Bar as solely a limited liability

10

> company, Becky, Dang, and Tran improperly obtained a temporary restraining order that resulted in the closing of [The] Kute Bar that led to its lease termination and forfeiture of all assets without regard for the applicable laws governing fiduciary obligations and the termination and orderly winding down of a partnership. Becky, Dang, and Tran had the ulterior motive of forcing Fugo to buy them out or forcing Fugo out of the business without regard for his rights as a partner and without regard for their fiduciary duties owned to him and the KB Partnership.

Viewed as a whole, in the context of the entire counterpetition, and in the light most favorable to Fugo, *see Van Stean*, 2023 WL 3687408, at \*5; *Cweren*, 2023 WL 2977755, at \*16, this paragraph—though inartfully drafted—reflects that Fugo's breach-of-fiduciary-duty claim, like his breach-of-contract claim, is based on Becky, Dang, and Tran's efforts to shut down the restaurant by a majority vote to pressure Fugo into buying them out on favorable terms. Thus, while Appellants' filing the TRO application is evidence of the breach, it was not the triggering event for Fugo's breach-of-fiduciary-duty claim. Further, as previously noted, even if we were to assume that Appellants' obtaining the TRO was part of the broader array of conduct constituting the alleged breach, at least some of the alleged conduct comprising the breach falls outside the TCPA's scope, and that alone provides a sufficient basis for denying Appellants' TCPA motion as to Fugo's breach-of-fiduciary-duty claim. *See Graves*, 2023 WL 370589, at \*4.

Thus, Appellants failed to carry their step-one burden, and the trial court did not err by denying Appellants' TCPA motion as to Fugo's breach-of-fiduciary-duty claim.

11

### 3. Tortious Interference

Appellants contend that the TCPA applies to Fugo's tortious-interference claim because it is based on "the shutdown," which purportedly includes Appellants' TRO application and the statements therein. But as we have explained, even if "the shutdown," as that term is used in connection with Fugo's tortious-interference claim, includes Appellants' TRO application, it also refers to other alleged conduct that is clearly outside the TCPA's scope. Thus, Appellants failed to carry their step-one burden. *See Graves*, 2023 WL 370589, at \*4. Accordingly, the trial court did not err by denying Appellants' TCPA motion as to Fugo's tortious-interference claim.

### 4. Abuse of Process

Appellants argue that the TCPA applies to Fugo's abuse-of-process claim because it "is expressly based on [their] exercise of the right to petition." As they point out, Fugo conceded in his response to their TCPA motion that his abuse-of-process claim is based on the way in which Appellants "used the court to further their unlawful scheme." Indeed, in his briefing in this court, Fugo acknowledges that his abuse-of-process claim is based on his allegation that Appellants "improperly obtained a restraining order closing [The Kute Bar]." And when the counterpetition is viewed as a whole, it is evident that this allegation is, in turn, based on Fugo's assertions that Appellants made misrepresentations to the court and "intentionally

omit[ed] the partnership commitment" in their TRO application.[7]  Given Fugo's acknowledgement that his abuse-of-process claim is based on Appellants' TRO application, the allegations in Fugo's counterpetition, and the nature of abuse-of-process claims in general, we conclude that Appellants have satisfied their burden to show that Fugo's abuse-of-process claim is based on or in response to Appellants' exercise of the right to petition.  *See LaCore Enterprises, LLC v. Angles*, No. 05-21-00798-CV, 2023 WL 2607562, at *10 (Tex. App.—Dallas Mar. 23, 2023, no pet.) (mem. op.).

Having concluded that Appellants satisfied their initial burden to show that the TCPA applies to Fugo's abuse-of-process claim, we must determine whether Fugo carried his burden under the TCPA's second step to establish each essential element of this claim by clear and specific evidence.  *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.005(c); *Lyden v. Aldridge*, No. 02-23-00227-CV, 2023 WL 6631528, at *3 (Tex. App.—Fort Worth Oct. 12, 2023, no pet.) (mem. op.).

The essential elements of an abuse-of-process claim are:  (1) the plaintiff was served with valid process; (2) the defendant made an illegal, improper, or perverted use of the process after it was issued; (3) the defendant had an ulterior motive or purpose in using the process; and (4) the plaintiff sustained damage from the

---

[7]We note that the counterpetition states that Fugo's abuse-of-process claim is based on "the same set of facts" as his previously discussed claims for breach of contract and breach of fiduciary duty.

13

improper use. *See Warner Bros. Ent., Inc. v. Jones*, 538 S.W.3d 781, 815 (Tex. App.—Austin 2017), *aff'd*, 611 S.W.3d 1 (Tex. 2020); *Hunt v. Baldwin*, 68 S.W.3d 117, 129–30 (Tex. App.—Houston [14th Dist.] 2001, no pet.); *see also* O'Connor's Texas Causes of Action ch. 2, § 1.1 (2022). "The focus is on the use of the process once it is properly obtained, not on the motive for originally obtaining the process." *Davis v. West*, 433 S.W.3d 101, 110 (Tex. App.—Houston [1st Dist.] 2014, pet. denied). "When the process is used for the purpose for which it is intended, even though accompanied by an ulterior motive, no abuse of process occurs." *Whitehead v. Mackenzie*, No. 02-09-00383-CV, 2011 WL 2755349, at *5 (Tex. App.—Fort Worth July 14, 2011, pet. denied) (mem. op.). "A claim based on the filing and maintaining of a lawsuit and the obtaining of a temporary restraining order cannot constitute abuse of process, because abuse of process refers to the improper use of the process after it has been issued." *Spencer v. Overpeck*, No. 04-16-00565-CV, 2017 WL 993093, at *6 (Tex. App.—San Antonio Mar. 15, 2017, pet. denied) (mem. op.) (first citing *Alsheikh v. Dyab*, No. 07-08-00162-CV, 2010 WL 1380978, at *2 (Tex. App.—Amarillo Apr. 7, 2010, no pet.) (mem. op.); and then citing *Michels v. Zeifman*, No. 03-08-00287-CV, 2009 WL 349167, at *6 (Tex. App.—Austin Feb. 12, 2009, pet. denied) (mem. op.)).

Here, Fugo's abuse-of-process claim is based on his allegation that Appellants—in order to pressure Fugo to buy out their interests on favorable terms—improperly obtained a TRO by filing an application that misrepresented that The Kute Bar is a limited liability company and omitted any reference to the partnership's

14

existence. But because this tort is concerned with the use of the process *after* it has been properly obtained, not on the defendant's motive for originally obtaining the process, *see Davis*, 433 S.W.3d at 110, Fugo's allegation—even if true—that Appellants obtained a TRO based on false facts is insufficient to satisfy the second element. *See Spencer*, 2017 WL 993093, at *6 ("Even if the [appellants'] lawsuit was based on false statements and allegations, however, [appellee] has not shown how the temporary restraining order, once it was obtained, was improperly used."). Fugo has not shown how Appellants improperly used the TRO once it was obtained; rather, the record reflects that it was used for its intended purpose—to protect Appellants' rights and maintain the status quo pending the outcome of the underlying lawsuit. *See Whitehead*, 2011 WL 2755349, at *5; *Preston Gate, LP v. Bukaty*, 248 S.W.3d 892, 897 (Tex. App.—Dallas 2008, no pet.) ("To constitute an abuse of process, the process must have been used to accomplish an end which is beyond the purview of the process and which compels a party to do a collateral thing which he could not be compelled to do."); *see also* Tex. Civ. Prac. & Rem. Code Ann. § 65.011(2); *In re Spiritas Ranch Enters., L.L.P.*, 218 S.W.3d 887, 895 (Tex. App.—Fort Worth 2007, orig. proceeding) ("The purpose of a TRO is to preserve the status quo . . . ."). Therefore, Fugo did not establish a prima facie case for his abuse-of-process claim, and the trial court erred by denying Appellants' motion to dismiss with regard to that claim.

### III.  CONCLUSION

Having determined (1) that the TCPA applies to Fugo's abuse-of-process claim but not to his breach-of-contract, breach-of-fiduciary-duty, and tortious-interference claims and (2) that Fugo failed to present clear and specific evidence of each element of his abuse-of-process claim, we reverse, in part, and render judgment dismissing Fugo's abuse-of-process claim; affirm the trial court's order denying Appellants' TCPA motion in all other respects; and remand this matter for further proceedings consistent with this opinion and TCPA Section 27.009.[8]  Tex. Civ. Prac. & Rem. Code Ann. § 27.009.

/s/ Brian Walker

Brian Walker
Justice

Delivered:  October 24, 2024

---

[8]In their TCPA motion, Appellants requested attorney's fees under TCPA Section 27.009(a), but we note that to the extent Fugo's abuse-of-process claim is a compulsory counterclaim, Appellants' request for attorney's fees would be governed by TCPA Section 27.009(c).  *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.009(a), (c).